UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY LIPKOVITCH,

      Plaintiff,

                                    Case No. 11-15081-DT

v.

                                    HON. DENISE PAGE HOOD

COUNTY OF WAYNE, BENNY N.
NAPOLEON and POLICE OFFICERS
ASSOCIATION OF MICHIGAN,



      Defendants.

_____/

                CLERK'S OFFICE
            U.S. DISTRICT COURT
             EASTERN MICHIGAN

**<u>OPINION AND ORDER GRANTING
MOTIONS FOR SUMMARY JUDGMENT
AND
ORDER DISMISSING ACTION</u>**

## I.    BACKGROUND/FACTS

On November 17, 2011, this matter was removed from the Wayne County

Circuit Court, State of Michigan. The Complaint in this instant action was filed on

October 24, 2011, followed by an amended Complaint on November 1, 2011. The

Notice of Removal indicates there was a related previously-filed action in this district,

*Tiffany Lipkovitch v. Wayne Count, et al.,* Case No. 10-13961 (E.D. Mich.)

(*Lipkovitch I*). In the Amended Complaint, Plaintiff Tiffany Lipkovitch alleges the

following against Defendants County of Wayne County ("Wayne County"), Benny

N. Napoleon ("Napoleon") and Police Officers Association of Michigan ("POAM"):

Breach of Duty of Fair Representation (Count I); Breach of Contract as to Wayne County (Count II); Violation of Elliott-Larsen Civil Rights Act, Race Discrimination in Enforcement of Employment Contract (Count III); Violation of the Michigan Elliott-Larsen Civil Rights Act (Count IV); Breach of Duty under Art. 1, § 17 of State of Michigan Constitution to Conduct Fair and Just Investigation (Count V); Violation of Plaintiff's Liberty and Property Interest in Violation fo the 14th Amendment (Count VI); Abuse of Discretion in Discriminatory Selective Enforcement of Progressive Disciplinary Policy (Count VII); and, Failure to Investigate (Count VIII) (*Lipkovitch II*).

Since March 4, 1996, Lipkovitch was a deputy sheriff with the Wayne County Sheriff's Department. Lipkovitch's employment relationship was governed by a Collective Bargaining Agreement ("CBA") between Wayne County and the POAM. Lipkovitch was terminated effective May 24, 2010 due to a series of misconduct charges, including a charge of fraternization with known felons who were inmates housed at the Michigan Department of Corrections ("MDOC").

The termination was based on a complaint filed by the MDOC that a female deputy sheriff was assisting various prisoners in smuggling items. The Wayne County Sheriff's Internal Affairs Office ("IA") initiated an investigation by summoning Lipkovitch and her union representative from the POAM, Corporal

Richard Perkins, for an Internal Affairs interview on March 25, 2010. Lipkovitch was given her Garrity Rights and then examined regarding the allegations of the MDOC complaint. Following the IA interview, Lipkovitch was charged with violating the Wayne County Sheriff's Departments policies and rules based on the MDOC.

An Administrative Review and Determination ("ARD") Hearing on the charges was held on May 24, 2010. Officer Gerard Grysko, the Disciplinary Deputy Chief ("Grysko"), conducted the hearing. Second Vice President of POAM, Corporal Deborah Martin ("Martin"), represented Lipkovitch at the hearing. Lipkovitch offered no opposition to the charges at the ARD Hearing. At the conclusion of the hearing, Grysko found Lipkovitch guilty as charged and her employment was terminated.

Martin filed a grievance on Lipkovitch's behalf on May 25, 2010 challenging the termination. The matter proceeded through the steps of the grievance procedure. At Step 4 of the grievance procedure, Local Union President Gregory Hattway met with the Wayne County Labor Relations Division to present Lipkovitch's case. On June 7, 2010, the grievance was denied by Labor Relations Analysis Yvonne Holiday-Mickens. Martin presented the documents regarding Lipkovitch's disciplinary and grievance proceedings to the POAM on June 15, 2010 for evaluation

3

and a determination of whether to proceed to arbitration. On July 29, 2010, Marha M. Champine, Assistant General Counsel for the POAM, informed Martin that after review of the materials submitted, the POAM would not pursue Lipkovitch's grievance to arbitration.

Lipkovitch thereafter filed the first lawsuit in this district on October 4, 2010. In *Lipkovitch I,* summary Judgment was entered against Lipkovitch and in favor of Wayne County and Napoleon as to all federal and state law claims alleged by Lipkovitch. (Case No. 10-13961, Doc. No. 30) The claim against the POAM under the Labor Management Relations Act was dismissed, the Court noting that Lipkovitch intended to pursue a claim against the POAM in the State court under Michigan's Public Employment Relations Act ("PERA"). (*Id.*) In State court, Lipkovitch filed the instant suit *(Lipkovitch II)* not only against the POAM under PERA, but also against Wayne County and Napoleon alleging the same claims as in *Lipkovitch I.*

This matter is now before the Court on Defendants' Motions for Summary Judgment. The POAM seeks dismissal on the merits under PERA. Wayne County and Napoleon seek dismissal based on *res judicata.* Response, reply and supplemental briefs have been filed.

## II.    ANALYSIS

### A.    Summary Judgment Standard of Review

4

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson,*

5

477 U.S. at 248.

### B.      Wayne County Defendants' Motion for Summary Judgment

The Wayne County Defendants move for summary judgment asserting *res judicata* bars Lipkovitch's current claims based on this Court's ruling in *Lipkovitch I*. Lipkovitch responds that she presents new allegations, new evidence has arisen, and public policy precludes application of *res judicata* on her state law claim under Elliott-Larsen.

The doctrine of *res judicata* involves both "claim preclusion" and "issue preclusion." See *Migra v. Warren City School District Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984). Claim preclusion involves three elements: 1) there must be a final judgment on the merits on the prior lawsuit; 2) the same claims are involved; and 3) the same parties or their privies are involved. *EEOC v. United States Steel Corp.*, 921 F.2d 489, 493 (3rd Cir. 1990); *Montana v. United States*, 440 U.S. 147, 153-54 (1979); *James v. Gerber Products Co.*, 587 F.2d 324, 327-28 (6th Cir. 1978). *Res judicata* requires that a plaintiff initially raise all claims in prior suits and therefore bars those claims from being litigated at some future time. See *Rivers v. Barberton Board of Education*, 143 F.3d 1029, 1031-32 (6th Cir. 1998).

The first element, that there be a final judgment on the merits in a prior lawsuit, has been met. The Court entered a judgment and an order dismissing Wayne County

and Napoleon in the prior lawsuit, *Lipkovitch I.* (Case No. 10-13961, Doc. No. 30) The second element has been met in that the same claims of discrimination under state and federal law and constitutional violations were alleged by Lipkovitch against Wayne County and Napoleon. (*Id.*) The third element is met in that Lipkovitch sued the same defendants in this case as in *Lipkovitch I*–Wayne County and Napoleon. (*Id.*)

Lipkovitch's argues that based on public policy, state courts are not bound to follow federal precedent since Michigan's Elliott-Larsen Civil Rights Act is far more inclusive and more liberal than a Title VII action, citing *Rasheed v. Chrysler Motor Corp.,* 196 Mich. App. 196 (1992) and *Michigan Dep't of Civil Rights re ex rel Jones v. Michigan Dep't of Civil Service,* 101 Mich. App. 295 (1980). The Court's review of these two cases shows that state courts are not bound to follow federal precedent when interpreting the Michigan's Elliott-Larsen Act. As noted by the Michigan Supreme Court reversing the *Rasheed* Michigan Court of Appeal's decision, "[t]he Michigan Civil Rights Act, though clearly modeled after title VII, provides an independent basis for state claims of wrongful discharge. Although federal precedent is persuasive, it is not binding on state courts." *Rasheed v. Chrysler Corp.,* 445 Mich. 109, 124 n. 20 (1994). "Nonetheless, this Court has already relied on federal authority as being persuasive in this area." *Id.*

In this case, it is the same federal court, not the State court, ruling on the same issues and claims addressed in *Lipkovitch I*. This Court's previous rulings addressed Lipkovitch's claims under the Michigan's Elliott-Larsen Civil Rights Act. Lipkovitch's argument as to new evidence, an opinion by the Ingham County Circuit Court, *Jackson v. MDOC*, date stamped February 5, 2010, is without merit since such evidence is not new and was available to Lipkovitch in her previous lawsuit. (Resp., Ex. 1, *Jackson v. MDOC*, Case No. 09-1163-AA (Ingham Cnty. Cir. Crt. Feb. 5, 2010)) The *Jackson* case involved a prisoner misconduct claim before the Ingham County Circuit Court. *Lipkovitch I* was filed on October 4, 2010, almost seven months after the decision in Ingham County Circuit Court was issued. The summary judgment motion in *Lipkovitch I* was filed in September 2011. Lipkovitch had more than 18 months to address the *Jackson* opinion before the filing of the summary judgment motion in *Lipkovitch I*.

For the reasons stated above, *res judicata* or claim preclusion is applicable to this second case, *Lipkovitch II*, as to Defendants Wayne County and Napoleon. The claims against Wayne County and Napoleon are dismissed based on *res judicata*.

**C.    POAM's Motion for Summary Judgment**

**1.    Duty of Fair Representation under PERA, Count I**

**a.    Law**

8

The POAM seeks dismissal of the duty of fair representation claim under PERA, M.C.L. § 423.216, arguing that its decision not to pursue Lipkovitch's claim through arbitration did not violate its duty under PERA. The POAM submitted various documents to support its summary judgment motion, including Lipkovitch's statement admitting to fraternizing with the prisoners and POAM's written letter as to the reasons why it was not going to pursue the matter to arbitration. (POAM Motion, Exs. 2 and 8) POAM's General Counsel indicated that the facts in support of the charges against Lipkovitch "are overwhelming" and that based on the evidence presented it was the POAM's opinion that it could not prevail on the issue of guilt, nor on the issue of the severity of punishment. (POAM Motion, Ex. 2) Lipkovitch responds that there are genuine questions of material fact as to whether the POAM breached its duty of fair representation.

A union breaches its duty of fair representation if its conduct in representing the employee was "arbitrary, discriminatory, or in bad faith." *Goolsby v. Detroit,* 419 Mich. 651, 661 (1984); *Silbert v. Lakeview Educ. Ass'n, Inc.,* 187 Mich. App. 21, 25 (1991); *Knoke v. East Jackson Pub. Sch. Dist.,* 201 Mich. App. 480, 485 (1993). The union's duty of fair representation consists of three responsibilities: 1) to serve the interests of all members without hostility or discrimination; 2) to exercise its discretion with complete good faith and honesty; and, 3) to avoid arbitrary conduct.

*Goolsby,* 419 Mich. at 664, quoting *Vaca v. Sipes,* 386 U.S. 171, 177 (1967).   An employee does not have the absolute right to have a grievance taken to arbitration, even where, in some instances, the employee's grievance against the employer may have merit under the terms of the applicable collective bargaining agreement. *Goolsby,* 419 Mich. at 660-65; *Knoke,* 211 Mich. App. at 486.

### b.   Discrimination or Hostility

Lipkovitch argues in her response brief that Lipkovitch's race and/or gender caused the POAM to be hostile or deliberately indifferent towards Lipkovitch, referring the Court to Exhibit 2 of the POAM's motion. This exhibit does not support Lipkovitch's claim that the POAM was hostile or discriminatory towards her. Exhibit 2 of the POAM's motion is a letter written by the Assistant General Counsel for the POAM, Champine, to Martin, Lipkovitch's Union representative. The letter sets forth the reasons why the POAM declined to pursue Lipkovitch's grievance to arbitration. (Ex. 2, POAM's Motion, Doc. No. 11-3) Nothing in Champine's letter to Martin creates a genuine issue of material fact that would support Lipkovitch's claim that the POAM was hostile toward or discriminated against Lipkovitch.

### c.   Bad Faith

Lipkovitch asserts that the POAM acted in bad faith because it was inept, ineffective and the hearing officer had little choice but to find against Lipkovitch.

Lipkovitch claims the POAM should have presented arguments that Lipkovitch had an underlying mental condition, such as post traumatic stress disorder ("PTSD").

As noted above, an employee does not have the absolute right to have a grievance taken to arbitration. *Goolsby,* 419 Mich. at 660-65. The POAM set forth its reasons for not taking the matter to arbitration based on the evidence presented during the grievance process. There is no dispute that Lipkovitch wrote a statement admitting to the complaint against her of fraternizing with prisoners. (POAM Motion, Ex. 8) Lipkovitch's unsupported assertions that the POAM acted in bad faith is insufficient to establish that the POAM breached its duties. *Greer v. Detroit Public Schools,* 2012 WL 5853869 at *2 (Mich. App. Nov. 15, 2012). Lipkovitch has not created a genuine issue of material fact that the POAM's actions were made in bad faith.

### d.    Arbitrary

Lipkovitch argues that there exists a genuine question of material fact that POAM's actions were arbitrary raising the same argument above, that she suffered from PTSD. Lipkovitch asserts that her conduct was so irrational as to raise the issue of why she would act to jeopardize her 14 years' tenure. Lipkovitch claims there exist genuine issues of material fact that the POAM threw her "to the wolves, or traded her off for some other white or male deputy." (Resp., pp. 15-16) Lipkovitch

also claims that her representative, Martin, was a "rookie" and ineffective. (Resp., p. 6)

Lipkovitch did not submit any documents to support her claims against the POAM that it acted arbitrarily in representing her through the grievance process, but instead referred to the POAM and the Wayne County Defendants' exhibits. Lipkovitch referred to Martin's deposition transcript, Ex. 25 to the Wayne County Defendants' motion, to support her argument that Martin was inept. Lipkovitch argues that Martin's deposition shows instances where reasonable minds might differ as to whether she possessed the knowledge, experience or training to render effective representation to Lipkovitch during the grievance process. (Resp., p. 3)

Martin indicated that she is a second vice-president of POAM. (Martin Dep., p. 5) Martin testified that once she received a response from Lipkovitch's disciplinary hearing, then a grievance was filed on behalf of Lipkovitch. (Martin Dep., p. 12) Martin further testified that when she went over the disciplinary packet with Lipkovitch during a conference call, Lipkovitch admitted to everything she was accused of and that Lipkovitch's focus was the amount of discipline and the protection of her job. (Martin Dep., pp. 23-25) Martin noted Lipkvotich's disciplinary complaint was her first felony charge against an employee and termination matter, but that in this particular case, she consulted the president of

POAM throughout the process. (Martin Dep., p. 28) Martin indicated that the president's opinion was that he believed Lipkovitch would be terminated, and Martin relayed this opinion to Lipkovitch. (Martin Dep., p. 28) After the administrative hearing and the discipline was issued, Martin filed a grievance on behalf of Lipkovitch asserting that the discipline was unjust and excessive at step 4 of the grievance procedure process. (Martin Dep., pp. 40-41) After the step 4 hearing was conducted, Martin had no part in any POAM decision to arbitrate. (Martin Dep., pp. 44-46) After step four, Martin submitted her paperwork to the POAM for its review of whether to proceed to arbitration. (Martin Dep., pp. 48-49, 54)

Martin's deposition does not show that she acted arbitrarily when she represented Lipkovitch during the grievance process. Knowing that Lipkvotich's disciplinary complaint related to a felony charge resulting in possible termination, Martin sought advice and guidance from the president of POAM. The issue of Lipkovitch's guilt as to the disciplinary complaint was not the focus of Lipkovitch during the grievance process since she admitted to the charges. Lipkovitch's main concern through the grievance process was to protect her job. Lipkovitch has failed to carry her burden that the POAM's representation of her through the grievance process was arbitrary.

The Court finds Lipkovitch has also failed to show that the POAM acted

13

arbitrarily when it determined not to take Lipkovitch's grievance to arbitration. Lipkovitch referred to the POAM letter, POAM's exhibit 2, declining to move forward to arbitration, to support her claim that the decision was arbitrary. Exhibit 2 is the POAM's letter setting forth the reason why it declined to proceed to arbitration as previously addressed above. The grievance procedure was followed through all the necessary steps before Lipkovitch was terminated and the POAM represented Lipkovitch through the process. Lipkovitch wrote a statement admitting to the allegations of fraternization with prisoners. Lipkovitch has not shown that the POAM's decision not to arbitrate her grievance was arbitrary because the evidence gathered during the grievance procedure established Lipkovitch's admission of guilt. The lack of evidence as to whether the POAM acted arbitrarily is fatal to Lipkovitch's breach of the union's duty of fair representation. *Greer*, 2012 WL 5854869 at * 3.

Based on the arguments and evidence submitted by the POAM and Lipkovitch, the Court finds that Lipkovitch has not shown that the POAM breached its duty of fair representation under PERA. The duty of fair representation claim must be dismissed against the POAM.

### 2.    Count VIII, Failure to Investigate

Because Lipkovitch has failed to state a claim against the POAM for failure to breach the duty of fair representation under PERA, the failure to investigate claim

must also be dismissed.  A failure to investigate allegation falls under the alleged conduct of "arbitrary, discriminatory, or in bad faith." *Sudderth v. Alreco Metals, Inc.,* 839 F.Supp. 1267, 1272 (W.D. Mich. 1993); *Danton v. Brighton Hosp.,* 335 Fed. Appx. 580, 585 (6th Cir. Jul. 1, 2009).   The failure to investigate claim against the POAM must be dismissed.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Motion for Summary Judgment filed by Defendants County of Wayne and Benny Napoleon **(Doc. No. 13)** is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Defendant Police Officers Association of Michigan **(Doc. No. 11)** is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.

DENISE PAGE HOOD
United States District Judge

DATED:   **MAR 2 6 2014**

15